## SUPERINTENDENT OF FIVE CIVILIZED TRIBES v. COMMISSIONER OF INTERNAL REVENUE.

No. 817. Argued May 6, 7, 1935.—Decided May 20, 1935.

*Messrs. Thomas J. Reilly* and *Arthur F. Mullen,* with whom *Messrs. F. M. Goodwin* and *George F. Shea* were on the brief, for petitioner.

*Assistant Attorney General Wideman,* with whom *Solicitor General Reed* and *Messrs. J. W. Morris* and *J. P. Jackson* were on the brief, for respondent.

MR. JUSTICE MCREYNOLDS delivered the opinion of the Court.

Sandy Fox, for whom this suit was instituted, is a full-blood Creek Indian. Certain funds, said to have been

derived from his restricted allotment, in excess of his needs, were invested. The proceeds therefrom were collected and held in trust under direction of the Secretary of Interior. The question now presented is whether this income was subject to the federal tax laid by the 1928 Revenue Act (c. 852, §§ 11, 12, 45 Stat. 791). The Commissioner, the Board of Tax Appeals and the court below answered in the affirmative.

Petitioner maintains that the court should have followed the rule which it applied in *Blackbird* v. *Commissioner,* 38 F. (2d) 976; also that it erroneously held Congress intended to tax income derived from investment of funds arising from restricted lands belonging to a full-blood Creek Indian.

Blackbird, restricted full-blood Osage, maintained that she was not subject to the federal income tax statute. The court sustained that view and declared:

" Her property is under the supervising control of the United States. She is its ward, and we cannot agree that because the income statute, Act of 1918 (40 Stat. 1057), and Act of 1921 (42 Stat. 227), subjects ' the net income of every individual ' to the tax, this is alone sufficient to make the Acts applicable to her. Such holding would be contrary to the almost unbroken policy of Congress in dealing with its Indian wards and their affairs. Whenever they and their interests have been the subject affected by legislation they have been named and their interests specifically dealt with."

This does not harmonize with what we said in *Choteau* v. *Burnet* (1931), 283 U. S. 691, 693, 696:

" The language of §§ 210 and 211 (a) [Act 1918] subjects the income of ' every individual ' to tax. Section 213 (a) includes income ' from any source whatever.'[1]

---

[1] Like provisions are in §§ 210 and 211 (a) Rev. Acts 1921, 1924, 1926, and §§ 11 and 12 (a) Act of 1928; § 213 (a) Acts 1921, 1924, 1926 and § 22 Act of 1928.

The intent of Congress was to levy the tax with respect to all residents of the United States and upon all sorts of income. The Act does not expressly exempt the sort of income here involved, nor a person having petitioner's status respecting such income, and we are not referred to any other statute which does. . . . The intent to exclude must be definitely expressed, where, as here, the language of the Act laying the tax is broad enough to include the subject matter."

The court below properly declined to follow its quoted pronouncement in Blackbird's case. The terms of the 1928 Revenue Act are very broad, and nothing there indicates that Indians are to be excepted. See *Irwin* v. *Gavit*, 268 U. S. 161; *Heiner* v. *Colonial Trust Co.*, 275 U. S. 232; *Helvering* v. *Stockholms Enskilda Bank*, 293 U. S. 84; *Pitman* v. *Commissioner*, 64 F. (2d) 740. The purpose is sufficiently clear.

It is affirmed that "inalienability and nontaxability go hand in hand; and that it is not lightly to be assumed that Congress intended to tax the ward for the benefit of the guardian."

The general terms of the taxing act include the income under consideration, and if exemption exists it must derive plainly from agreements with the Creeks or some Act of Congress dealing with their affairs.

Neither the Creek agreement of 1901 nor the supplemental agreement (1902) conferred general exemption from taxation upon Indians; homesteads only were definitely excluded, although alienation of allotted lands was restricted.

The suggestion that exemption must be inferred from the Act of April 26, 1906 (34 Stat. 137) or May 27, 1908

(35 Stat. 312) is not well founded. The first of these extended restrictions upon the alienation of allotments for twenty-five years unless sooner removed by Congress, and provided: "Sec. 19. . . . That all lands upon which restrictions are removed shall be subject to taxation, and the other lands shall be exempt from taxation as long as the title remains in the original allottee." This exemption related to land and not to income derived from investment of surplus income from land. Moreover, the Act itself was superseded by the second one, which did not contain the quoted provision, but declared: "Sec. 4. That all lands from which restrictions have been or shall be removed shall be subject to taxation and all other civil burdens as though it were the property of other persons than allottees of the Five Civilized Tribes. . . ."

We find nothing in either act which expresses definite intent to exclude from taxation such income as that here involved. See *Shaw* v. *Gibson-Zahniser Oil Corp.*, 276 U. S. 575, 581.

Nor can we conclude that taxation of income from trust funds of an Indian ward is so inconsistent with that relationship that exemption is a necessary implication. Nontaxability and restriction upon alienation are distinct things. *Choate* v. *Trapp,* 224 U. S. 665, 673. The taxpayer here is a citizen of the United States, and wardship with limited power over his property does not, without more, render him immune from the common burden.

*Shaw* v. *Gibson-Zahniser Oil Corp., supra,* held that restricted land purchased for a full-blood Creek—ward of the United States—with trust funds was not free from state taxation, and declared that such exemption could not be implied merely because of the restrictions upon the Indian's power to alienate. *Affirmed.*