## LANDMAN v. UNITED STATES.
### No. 46964.

Court of Claims.
May 5, 1947.

Huston Thompson, of Washington, D. C. (Oscar P. Mast, of Washington, D. C., on the brief), for plaintiff.

John W. Hussey, of Washington, D. C., and Douglas W. McGregor, Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

Before. WHALEY, Chief Justice, and LITTLETON, MADDEN, JONES, and WHITAKER, Judges.

LITTLETON, Judge.

The Superintendent of the Five Civilized Tribes of Indians sues to recover Federal estate taxes in the amount of $6,847.18, paid on behalf of the estate of Punskee Field, a restricted full-blood Creek Indian, who died intestate June 5, 1940.

In determining the decedent's estate tax liability the Commissioner of Internal Rev-

enue included in the gross estate all property held by the decedent at the time of his death, consisting of 160 acres of allotted land in Okfuskee County, Oklahoma, and his oil and gas royalty interest therein, a house and lot in Henryetta, Oklahoma, purchased out of restricted funds in 1924, United States Treasury bonds of a value of $104,937.50 purchased with restricted funds and accrued interest thereon of $638.89, restricted cash in the amount of $7,172.46 and accrued interest thereon of $25.49, and miscellaneous property consisting of Travel Bureau checks, livestock, and farm equipment. The bonds, the house and lot and the cash on deposit in the Treasury to the lessor's credit at the time of his death were derived in large part from royalties accruing prior to April 26, 1931, under an oil and gas mining lease entered into by the decedent and approved by the Secretary of the Interior in 1919, covering decedent's 160 acres of allotted land. Production was begun under the lease in 1922 and royalties realized from this lease were at all times collected and held for the lessor by the Superintendent of the Five Civilized Tribes.

In computing the tax now sought to be recovered there was also included 80 acres of purchased land not owned by the decedent at the time of his death but erroneously included in the decedent's gross estate, with reference to which the parties have stipulated (finding 17) that plaintiff is entitled to a refund of estate taxes.

Plaintiff filed a timely claim for refund which was rejected and now sues for the estate tax paid, on the ground that decedent's restricted real estate, United States Treasury bonds purchased with restricted funds (and deposited in the Treasury of the United States for safekeeping), restricted funds on deposit with the Treasurer of the United States to decedent's credit with the Five Tribes Agency, and personal property purchased on a restricted bill of sale, formed no part of and that the value thereof was wrongfully included in said gross estate for Federal estate tax purposes.

The decedent had acquired the 160 acres of land referred to above by deeds dated August 28, 1903, as his allotment in severalty of the tribal lands of the Creek Tribe of Indians under the provisions of the Original Creek Agreement between the United States and the Creek Tribe, dated March 8, 1900, ratified by act of Congress on March 1, 1901, 31 Stat. 861, and by the Creek Nation on May 25, 1901, as amended by the Supplemental Creek Agreement ratified by act of Congress on June 30, 1902, 32 Stat. 500. The allotment of the 160 acres to Field was a part of the plan first initiated by the Government by section 16 of the Act of Congress of March 3, 1893, 27 Stat. 612, 645, looking toward the extinguishment of separate national or tribal governments and the fee simple title held by the several Tribes to lands within the limits of the country occupied by the Cherokee, Creek, Choctaw, Chickasaw, and Seminole Nations, either by cession of such lands or some part thereof to the United States, or by the allotment and division of the same in severalty among the Indians.

Under the provisions of the Original and Supplemental Creek Agreements and the acts of Congress ratifying the same, the lands to be allotted in severalty were not to be alienable by the allottee or his heirs for five years, except with the approval of the Secretary of the Interior, and 40 acres of such land, selected by him as his homestead, were to be nontaxable and inalienable for 21 years. The deeds to Punskee Field for his 160 acres, one covering 40 acres selected as his homestead, the other covering the remainder of his allotment, contained appropriate reference to such provisions. The Act of April 26, 1906, 34 Stat. 137, extended the period of time during which no full-blood Creek should have the power to alienate, sell, dispose of, or encumber in any manner any of the lands allotted to him for twenty-five years after passage and approval of the Act, or to April 26, 1931, unless sooner removed by act of Congress. This extension of the restriction upon allotted Indian lands was coupled with a proviso that "all lands upon which restrictions are removed shall be subject to taxation, and the other lands shall be exempt from taxation as long as the title remains in the original allottee."

Plaintiff says that decedent's 160 acres of allotted land, and the direct income therefrom in the form of cash, Government

bonds and the house and lot purchased from restricted funds, are in the same category so far as taxation is concerned; that the land and the direct income therefrom are exempt from the Federal estate tax within the meaning and intent of the early treaties between the United States and the Creek Tribe, and within the meaning and intent of the subsequent agreements and acts of Congress. Plaintiff says, further, that the Act of May 10, 1928, 45 Stat. 495, 496, by necessary implication confirmed the right to exemption from taxation of decedent's allotment until April 26, 1956, and exemption of the direct income therefrom accruing prior to April 26, 1931, to the extent owned by decedent at the time of death in the form of cash, Government bonds and real estate.

This Act extended for an additional period of twenty-five years commencing on April 26, 1931, the restrictions against alienation or encumbrance of the lands allotted to members of the Five Civilized Tribes enrolled as of one-half or more Indian blood, and provided that all minerals, including oil and gas, produced on or after April 26, 1931, from restricted allotted lands should be subject to all State and Federal taxes of every kind and character. Section 4 of the Act of May 10, 1928, provides in part: "That on and after April 26, 1931, the allotted, inherited, and devised restricted lands of each Indian of the Five Civilized Tribes in excess of one hundred and sixty acres shall be subject to taxation by the State of Oklahoma under and in accordance with the laws of that State, and in all respects as unrestricted and other lands: *Provided,* That the Indian owner of restricted land, if an adult and not legally incompetent, shall select from his restricted land a tract or tracts, not exceeding in the aggregate one hundred and sixty acres, to remain exempt from taxation and shall file with the superintendent for the Five Civilized Tribes a certificate designating and describing the tract or tracts so selected: * * *"

The section further provides for the recording of this certificate with the Superintendent of the Five Civilized Tribes and in the records of the county in which the land is situated, and then further provides:

"And said lands, designated and described in the approved certificates so recorded, shall remain exempt from taxation while the title remains in the Indian designated in such approved and recorded certificate, or in any full-blooded Indian heir of devisee of the land: *Provided,* That the tax exemption shall not extend beyond the period of restrictions provided for in this Act: *And provided further,* That the tax-exempt land of any such Indian allottee, heir, or devisee shall not at any time exceed one hundred and sixty acres."

Pursuant to the provisions of the Act of May 10, 1928, as amended, the United States in 1929 selected for Punskee Field the identical lands which had been allotted to him in 1903, and a certificate approved by the Secretary of the Interior, reciting that such lands were designated "as tax exempt as long as the title thereto remains in the said Punskee Field, or in any full-blood Indian heir or devisee of said lands; such tax exemption, in no event, however, to extend beyond April 26, 1956" was recorded in the office of the Superintendent of the Five Civilized Tribes and in the county records of the county in which the land is situated.

The two questions presented are, first, whether the 160 acres of restricted allotted land selected and designated by Punskee Field to remain exempt from taxation and owned by him at the time of his death should have been excluded from his estate for federal tax purposes; and second, whether the oil and gas royalties from such land accruing prior to April 26, 1931, comprised of cash and of bonds and real estate into which most of such royalties were converted, should have been accorded similar treatment.

In Landman v. United States, 103 Ct.Cl.199, we had the same questions before us with reference to the estate of Jacob Pierce, a deceased full-blood Creek Indian. In that case the plaintiff limited his claim at the time of trial to the alleged erroneous inclusion within the decedent's gross estate of the value of the 160 acres of allotted land. We were not called upon to decide, therefore, the second question now presented for determination, whether the

royalties from an oil and gas lease on the allotted lands could be properly included in the decedent's estate for federal estate tax purposes. We held that the 160-acre allotment of land including the value of the oil and gas in place, of Jacob Pierce, deceased, was not properly includible in the decedent's gross estate, and that the plaintiff was entitled to recover so much of the estate tax assessed as resulted from the inclusion of the value of said land. In reaching that conclusion we interpreted the decision in Oklahoma Tax Commission v. United States, 319 U.S. 598, 63 S.Ct. 1284, 87 L.Ed. 1612, to be that the exemption afforded by the Act of May 10, 1928 (and we might have added, the Act of April 26, 1906), was intended not only to cover direct taxes on the lands, but as well an excise tax on the transfer of the lands by death. It was true in the Pierce estate as it is here, that the tax under consideration was a Federal tax, whereas the tax involved in Oklahoma Tax Commission v. United States, supra, was a State tax, but as we stated in our previous decision, this seems to us immaterial as regards the point under discussion. The taxes are identical in character; both are estate taxes levied upon transfers of property by death. The same principle should be applicable to both. In Carpenter v. Shaw, 280 U.S. 363, 366, 367, 50 S.Ct. 121, 74 L. Ed. 478, the court pointed out that while in general tax exemptions are not to be presumed and the statutes conferring them are to be strictly construed (cf. United States Trust Co. v. Helvering, 307 U.S. 57, 59 S.Ct. 692, 83 L.Ed. 1104), tax exemptions secured to the Indians by agreement between them and the Government are to be liberally construed. Defendant, however, would have us confine this rule of liberal interpretation to cases where a State tax is sought to be imposed. This would not carry out the thought expressed by the Court in Carpenter v. Shaw, supra [280 U.S. 363, 50 S.Ct. 122], as follows:

"* * * Doubtful expressions are to be resolved in favor of the weak and defenseless people who are the wards of the nation, dependent upon its protection and good faith. Hence, in the words of Chief Justice Marshall, 'The language used in treaties with the Indians should never be construed to their prejudice. If words be made use of, which are susceptible of a more extended meaning than their plain import, as connected with the tenor of the treaty, they should be considered as used only in the latter sense.' Worcester v. The State of Georgia, 6 Pet. 515, 582, 8 L. Ed. 483. See The Kansas Indians, 5 Wall. 737, 760, 18 L.Ed. 667. And they must be construed not according to their technical meaning but 'in the sense in which they would naturally be understood by the Indians.' Jones v. Meehan, 175 U.S. 1, 11, 20 S.Ct. 1, 5, 44 L.Ed. 49."

The application of the rule of liberal construction in the instant case involves no denial of power in Congress to lay taxes upon Indian estates. The question is what Congress has in fact directed. We recognize the limitation of what was in fact determined in Oklahoma Tax Commission v. United States, supra. The majority of the Court refused to accept the proposition that immunity from the Oklahoma estate tax could be rested upon an implication to be drawn from Congress' restriction of the Indian lands. It follows, we think, that the Court's judgment in that case, that the transfers of certain lands in the estates of the three deceased members of the Five Civilized Tribes were exempt from Oklahoma tax, necessarily rested upon the Court's construction of the Acts of April 26, 1906, and May 10, 1928, supra.

We are not unmindful of the argument advanced on behalf of the defendant that the Supreme Court carefully limited its decision to the question of immunity from State estate taxation, nor do we overlook the fact that immunity from Federal estate taxation was denied by the Circuit Court of Appeals in Landman v. Commissioner, 10 Cir., 123 F.2d 787 (certiorari denied. 315 U.S. 810, 62 S.Ct. 799, 86 L. Ed. 1209). The rationale of this latter case seems to us to be in conflict with what we conclude, as above shown, to be the rationale of the decision in Oklahoma Tax Commission v. United States, supra, holding that the allotted lands there involved were immune from the Oklahoma estate tax. If immunity from the imposition of a State excise tax on the right to inherit or succeed the nontaxable property is to

648

be found in the early treaties, agreements and acts of Congress culminating in the Act of May 10, 1928, under the rule of liberal construction employed by the Court, notwithstanding it may be argued that the tax falls upon the transfer of the economic benefits rather than upon the property of which the estate is composed, no valid reason appears for withholding such immunity from similar land sought to be burdened with a Federal tax identical in character.

Since it seems clear that the decision in the Oklahoma Tax Commission case was rested upon the express exemption from taxation of the allotted lands, in repudiation of the argument advanced by the State "that congressional exemption of the land from direct state taxation does not exempt the land from an estate tax," [319 U.S. 598, 63 S.Ct. 1290] we cannot give effect to defendant's contention that the exemptions from taxation contained in the various acts of Congress, to which reference was had in that case, were never intended to apply to federal taxation in any form. We find no suggestion of such a doctrine in Superintendent v. Commissioner, 295 U.S. 418, 55 S.Ct. 820, 79 L.Ed. 1517, or in Choteau v. Burnet, 283 U.S. 691, 51 S.Ct. 598, 75 L.Ed. 1353, where the federal income tax was challenged on the basis of a statute exempting Indian land from taxation.

There remains the further question regarding the treatment for estate tax purpose to be accorded the property of the decedent comprising the oil royalties derived prior to April 26, 1931, directly from the 160 acres of allotted lands.

[4] Plaintiff contends that since it was intended by the Government and the Indians that the land itself should not be subject to taxation and, therefore, not includible in the decedent's estate for tax purposes, the direct income from such land accruing prior to April 26, 1931, in the form of oil royalties (and hence the securities and other property into which they were converted), likewise should be excluded under a proper interpretation of the early treaties, agreements and acts of Congress to and including the Act of May 10, 1928, 45 Stat. 495, as amended by the Act of May 24, 1928, 45 Stat. 733. Plaintiff does not here rely upon any implication to be drawn from the Act of January 27, 1933, 47 Stat. 777, such as was discussed in the majority opinion in Oklahoma Tax Commission v. United States, supra, for the reason that all minerals, including oil and gas royalties, produced after April 26, 1931, had been made subject to State and Federal taxes of every kind and character by section 3 of the Act of May 10, 1928, supra. It is argued that by the provisions of section 3 of the 1928 Act making oil and gas royalties subject to tax after April 26, 1931, and by section 4 of that Act which continued the allotted land free of tax to the extent of 160 acres, Congress confirmed by necessary implication the previously intended exemption from all taxation of the direct income from the allotment as well as the exemption of the land itself.

A study of the majority and minority opinions of the Court in the case of the Oklahoma Tax Commission v. United States, supra, discloses that the provisions of the treaties, agreements and statutes upon which plaintiff relies in support of its claim for exemption from estate tax of the oil and gas royalties were considered by the Court. On the authority of the decision and judgment in that case that the funds and securities there involved were not exempt from the Oklahoma estate tax, we hold that plaintiff is not entitled to recover the estate tax involved in the second item of the claim in this case.

Judgment will be entered in favor of plaintiff upon the filing of a stipulation by the parties showing the amount due plaintiff under the findings and the foregoing opinion. It is so ordered.

MADDEN, JONES, and WHITAKER, Judges, concur.

WHALEY, Chief Justice, took no part in the decision of this case.