Robert E. SHELTON, Plaintiff,

v.

Harold A. LOCKHART, formerly Collector of Internal Revenue, Defendant, United States of America, Intervenor.

Jacqueline Elkins SHELTON, Plaintiff,

v.

Harold A. LOCKHART, formerly Collector of Internal Revenue, Defendant.

Nos. 9146, 9147.

United States District Court W. D. Missouri, W. D.

Aug. 29, 1957.

---

Oscar S. Brewer and Wm. Coleman Branton (of Brewer, Myers and Branton), Kansas City, Mo., for plaintiffs.

Edward L. Scheufler, U. S. Atty., Kansas City, Mo., Donald P. Hertzog, Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., James P. Garland, Dept. of Justice, Washington, D. C., and O. J. Taylor, Asst. U. S. Atty., Kansas City, Mo., on the brief), for defendant.

R. JASPER SMITH, District Judge.

These consolidated cases seek the refund of gift taxes paid by plaintiffs in 1951 in connection with the transfer by the Bureau of Indian Affairs of the United States Department of the Interior in September, 1950, of $200,000 in bonds and cash to the City National Bank and Trust Company of Kansas City, Missouri, to fund an irrevocable trust in which Jacqueline Elkins Shelton, one of the plaintiffs, was Trustor and the bank was Trustee. On May 14, 1951, plaintiffs filed gift tax returns and paid gift taxes aggregating $25,861.57 which were calculated on the basis of an assumed taxable transfer of $200,000, and on February 8, 1952, they filed claims for refund of the taxes. The United States of America has intervened in the case of Robert E. Shelton to assert a counterclaim in the amount of $366.72, representing additional gift taxes owed by Robert E. Shelton for the year 1950. It is conceded by the parties that if defendant prevails in this action, judgment on the counterclaim for intervenor should be as prayed.

The facts as I find them developed by the evidence are as follows:

Jacqueline Elkins Shelton is an Osage Indian Princess of the half-blood. At the time of the transfer in question she was twenty-eight years of age and the mother of three minor children, a son by a former marriage and a son and daughter belonging to her and Robert E. Shelton, the other plaintiff in these cases. At the time of this transaction she was legally incompetent due to her degree of Indian blood and the fact that she had not as yet obtained a certificate of competency from the Bureau of Indian Affairs of the United States Department of the Interior. As an incompetent Indian, she derived her income from that portion of the tribal property held by the United States in trust for her and her children, from the income from 8.5 headrights, and from certain land owned by her which could not be alienated without the approval of the Secretary of the Interior. She was entitled by law to the

income from all of the trust property and from her lands in her own name, but her income in excess of $1,000 quarterly from the headrights and from the segregated trust funds was dependent upon the approval of the Secretary of the Interior.

On April 19, 1950, she applied to the Bureau of Indian Affairs for a certificate of competency, and the then Superintendent of the Osage Agency recommended that the application be denied, on the announced ground that there was danger that the estate would be dissipated. Mrs. Shelton and her counsel entered into negotiations with the Washington Office of the Bureau to secure a favorable ruling on the application, and after review of the files, and the educational and other background of the applicant, the officials of the Bureau became convinced that the certificate properly should issue, and that Mrs. Shelton should be declared competent for all purposes. The certificate of competency not only released to her without restriction and free of trust all property except income from the headrights, but also permitted her to dispose of it by will without consent of the Secretary. In addition, and equally as important from her standpoint, it was a public recognition of competency, permitting her to assume what she considered her rightful place in unrestricted society to which her education and background entitled her.

Early in the negotiations, however, it became apparent that in spite of the fact that a certificate of competency was indicated, the Bureau officials were reluctant because of possible subsequent criticism to overrule the Superintendent's recommendation; and on August 10, 1950, the then Assistant Commissioner of the Bureau informed plaintiffs' counsel that a certificate of competency would be granted only if she first executed an instrument irrevocably placing $300,000 of her beneficial estate then held by the Government in trust for her children.

Efforts were made to have Mrs. Shelton declared competent without this condition. When these efforts failed, a counterproposal was submitted by which she offered to place $150,000 in trust as the Bureau insisted. This offer was refused. Eventually, agreement was reached on the sum of $200,000, with the further condition that officials of the Bureau examine and approve the form of the trust instrument. Several changes were made in the first draft of the instrument prepared by the City National Bank and Trust Company. The Bureau required that Robert E. Shelton be eliminated as a cotrustee, that sharp restrictions be inserted on invasion of principal and on use of the income for the benefit of the cestuis que trust, that investment powers of the trustee be curtailed, and that more specific provisions relating to the trustee's compensation be inserted. None of these changes were requested by Mrs. Shelton; all of them were demanded by the Bureau officials.

In passing, I might mention that defendant vigorously denies that coercion existed in connection with the execution of the trust instrument or in the details of its provisions. By oral testimony, department officials denied the details recited here, and insisted that they had no authority to exact such requirements as claimed, and that the certificate of competency would have been issued in any event. In the face of documentary proof to the contrary, bearing the signatures of these same officials, their testimony is not persuasive. There is no question but that pressure was brought to bear, and that in the absence of that pressure, Mrs. Shelton would not have executed the *inter vivos* trust as she did.

The trust was executed in September, 1950. In due course, the Bureau delivered to the trustee $200,000 in bonds and cash. Shortly thereafter, on September 29, 1950, a certificate of competency was issued to Mrs. Shelton, and she received from the Bureau, free of trust, property having a fair market value of $412,857.85, all income from the headrights without restriction, plus freedom from the restrictions on alienation of her lands previously imposed by law. More importantly, she received the unrestricted

right to dispose of her property by will, and to enjoy the free and unrestricted rights to citizenship incident to the certificate of competency.

At the outset, certain matters may well be eliminated as items of consideration here. There can be no reasonable question but that trust property of the Osage Indians is subject to the federal estate tax. West v. Oklahoma Tax Commission, 334 U.S. 717, 68 S.Ct. 1223, 92 L.Ed. 1676, rehearing denied 335 U.S. 838, 69 S.Ct. 12, 93 L.Ed. 390; and Landman v. United States, 71 F. Supp. 640, 109 Ct.Cl. 1. And, since federal estate and gift taxes are *in pari materia* and must be construed together, the overall scheme of taxation requires that the gift tax law be equally applicable to the trust property of Osage Indians. See for analogy, Burnet v. Guggenheim, 288 U.S. 280, 53 S.Ct. 369, 77 L.Ed. 748; Smith v. Shaughnessy, 318 U.S. 176, 63 S.Ct. 545, 87 L.Ed. 690; and Commissioner of Internal Revenue v. Berger, 2 Cir., 201 F.2d 171. Thus, if by reason of a gift of property subject to estate taxation, the property is removed from the estate and becomes no longer subject to estate taxation, the gift itself becomes subject to federal gift tax in accordance with the statutory scheme of taxation. Be this as it may, this general conclusion has no application here. For the reasons later set out in this memorandum, no gift occurred. And when, in fact, there is no gift, the philosophy announced by these cases certainly does not control us.

Defendant has gone to considerable pains to point out the many advantages enjoyed by restricted Osage Indians— advantages, he claims, not enjoyed by citizens generally, or by Osage Indians who have received certificates of competency. For example, certain taxes are not payable by restricted Osages; certain free counseling is available to them; the Bureau's investment services are available to them so that they are protected from the hazards of individual investment initiative; there is an actual restriction on the free use of their money and property, so that their estates are not in danger of dissipation. This, defendant argues, makes the certificate of competency not worth so much—at least measured in dollars. And perhaps that is true. Freedom is a priceless thing; and yet I would be hesitant to say that the price of freedom did not constitute "adequate and full consideration in money or money's worth" within the meaning of Section 1002 of the Internal Revenue Code of 1939, 26 U.S.C.A. (I.R.C.1939) § 1002. That Section provides that "where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration" shall be taxable as a gift. Certainly there is a major difference between a free and unrestricted citizen of the United States, on the one hand, and one possessing the citizenship of a restricted Osage Indian of the United States. I think if it actually required determination here, I would rule that receipt of full and unrestricted citizenship was adequate consideration for any bargain imposed under the revenue or other laws of this country; but, no such ruling is necessary. As I see this case, the question of whether or not there is full and adequate consideration under Section 1002 is eliminated by Section 86.8 of Treasury Regulations 108, I.R.C.1939. And precisely for the same reason, plaintiffs' calculations concerning the present value of Mrs. Shelton's interest before and after issuance of the certificate of competency, and the calculations of the value of the reversionary interests of her children before and after creation of the trust are equally unnecessary for determination of this case. This for the reason that as I view it, the question of adequacy of consideration is of no consequence.

The pertinent portion of Section 86.8 of Regulation 108 is as follows:

"* * * However, a sale, exchange, or other transfer of property made in the ordinary course of business (a transaction which is

bona fide, at arm's length, and free of any donative intent) will be considered as made for an adequate and full consideration in money or money's worth. * * *"

 In essence, this transaction simply represents a business venture between Mrs. Shelton and the Bureau of Indian Affairs. It was the result of negotiations extending over a period of many months. The fact that in her original application she indicated that one of the purposes of the application was to be in position to make adequate trust provisions for her children after they reached majority does not in any way negative the unalterable conclusion that the result here—a trust she did not want, made at a time she did not want to make it, and for an amount she was unwilling to pay at the time—was the completion of a cold business bargain, as bona fide as any business bargain could be, negotiated at arm's length, and obviously free from any donative intent. Under the provisions of Section 86.8, the transaction is, therefore, considered as made for an adequate and full consideration in money or money's worth and is not taxable. Even though in some respects it may be considered a family transaction—although that aspect of it is largely incidental under the factual situation here—it still should be treated as one "in the ordinary course of business" as defined in the Regulation, since each of its three criteria is fully met. See Rosenthal v. Commissioner of Internal Revenue, 2 Cir., 205 F.2d 505, 509; and Beveridge v. Commissioner of Internal Revenue, 10 T.C. 915. In the Rosenthal case, the U. S. Court of Appeals for the Second Circuit stated:

"* * * (E)ven a family transaction may for gift tax purposes be treated as one 'in the ordinary course of business' as defined in this Regulation if each of the parenthetical criteria is fully met."

Under this view of the case, the other issues submitted by plaintiffs and defendant are unnecessary of determination.

It follows that plaintiff Robert E. Shelton is entitled to judgment against defendant in the amount of $9,317.25 for gift taxes erroneously and illegally collected from him, together with interest thereon from the date of payment of the taxes, with his costs in this action; and in connection with the counterclaim of intervenor, judgment should be in favor of plaintiff and against intervenor.

Plaintiff Jacqueline Elkins Shelton is entitled to judgment against defendant in the amount of $16,544.32 for gift taxes erroneously and illegally collected from her, together with interest thereon from the date of payment of the taxes, with her costs in this action.

To the extent that they are not incorporated in this memorandum, the various requests for findings of fact and conclusions of law are denied.

Judgment will be entered accordingly. It is so ordered.