ALBERT L. LaFONTAINE and RITA F. LaFONTAINE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
La Fontaine v. Commissioner
Docket No. 6887-73.
United States Tax Court
T.C. Memo 1975-165; 1975 Tax Ct. Memo LEXIS 207; 34 T.C.M. (CCH) 742; T.C.M. (RIA) 750165; May 29, 1975, Filed Albert L. LaFontaine, pro se. Rick K. Budd, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency in the amount of $1,104 in petitioners' income tax for 1971. The only issue remaining is whether certain treaties between the United States and various Indian tribes, made during the period between 1778 and 1904, serve to exempt petitioners from Federal income tax liability. FINDINGS OF FACT Petitioners Albert L. LaFontaine and Rita F. LaFontaine, husband and wife, were legal residents of St. Paul, Minnesota, at the time they filed their petition. They filed their joint Federal income tax return for 1971 with the District Director of Internal Revenue at St. Paul, Minnesota. Albert L. LaFontaine (hereinafter referred to as petitioner) *208 is a certified member of the Turtle Mountain Band of Chippewa Indians. At the time of the trial, he was Chief of the Grand Council of Confederated Nations. Petitioners reported income of $9,060.56 on their joint Federal income tax return for 1971. The entire amount thereof was derived from wages earned by petitioner from employment as a machinist with Burlington Northern Inc. (hereinafter Burlington Northern). Petitioner calculated the tax due as zero [1]/ and inserted the following words in the top margin of the return: "Indian Not Subject to Taxation. See Laws Pertaining to; also U.S. Constitution." OPINION Petitioner contends that certain treaties between the United States and various Indian tribes, when read in light of Article VI [2] of the United States Constitution, serve to exempt his income from taxation. Respondent disagrees and contends that sections 1[3] and 61[4] subject to tax every individual's income, unless exempted by a treaty or act of Congress, "from whatever source *209 derived," including petitioner's wages from Burlington Northern. Respondent maintains that the treaties cited by petitioner do not contain any provision which can be interpreted to exempt petitioner's income from taxation. While we do not question petitioner's sincerity in his belief that he should not be required to pay *210 Federal income taxes, neither the Constitution nor the treaties which he cites provide him with the tax exemption he covets. "* * * Indians are citizens and * * * in ordinary affairs of life, not governed by treaties or remedial legislation, they are subject to the payment of income taxes as are other citizens." Squire v. Capoeman,351 U.S. 1, 6 (1956). In Commissioner v. Walker,326 F.2d 261, 263-264 (9th Cir. 1964), a case involving the wages earned by a noncompetent Indian [5]/ from employment by a taxexempt Indian community, the guiding principle was stated as follows: A general Act of Congress applying to all persons includes Indians and their property interests. Federal Power Commission v. Tuscarora Indian Nation, 362 U.S. 99, 116, 80 S.Ct. 543, 553, 4 L.Ed.2d 584 (1960). Sections 1 and 61(a) of the Internal Revenue Code of 1954 subject the income of "every individual" to tax, and include income "from any source whatever", that is not elsewhere specifically excluded. Because the Internal Revenue Code is a general Act of Congress, it follows that Indians are subject to payment of federal income taxes, as are other citizens, *211 unless an exemption from taxation can be found in the language of a Treaty or Act of Congress. Squire v. Capoeman, 351 U.S. 1, 6, 76 S.Ct. 611, 615, 100 L.Ed. 883 (1956); Superintendent of Five Civilized Tribes for Sandy Fox, Creek No. 1263 v. Commissioner, 295 U.S. 418, 55 S.Ct. 820, 79 L.Ed. 1517 (1935); Choteau v. Burnet, 283 U.S. 691, 51 S.Ct. 598, 75 L.Ed. 1353 (1931). This principle means that petitioner, in order to be entitled to the claimed exemption, must show that one or more of the treaties on which he relies contain some provision exempting his Burlington Northern wages from income taxation. Petitioner has cited more than 25 treaties in support of his claim to tax-exempt status. We have reviewed these documents *212 and can find nothing in them which applies to petitioner's Burlington Northern wages. Typical among the treaty clauses on which petitioner relies is the following passage from an agreement between the Chippewas and the United States with respect to fulfillment of treaty stipulations (Act of April 21, 1904, ch. 1402, art. VII, 33 Stat. 195): Article VII. So long as the United States retains and holds the title to any land in the use or occupation of any member of the Turtle Mountain band of Chippewa Indians or the title to other property in the possession of any Indian of said band, which it may do for twenty years, there shall be no tax or other duty levied or assessed upon the property, the title to which is held or retained by the United States. This treaty provision refers to a tax upon the property for a 20-year period. Neither this provision nor any of the other treaties cited by petitioner provide to the Turtle Mountain Band of Chippewas a blanket exemption from Federal income tax on all income. Cf. Superintendent v. Commissioner,295 U.S. 418, 420 (1935); Choteau v. Burnet,283 U.S. 691, 694 (1931). We can find no basis for holding *213 that petitioner's Burlington Northern wages are exempt from Federal income taxes. Accordingly, Decision will be entered for the respondent.
Footnotes
1. /↩ In making this calculation, petitioners claimed 12 children as dependency exemptions. Respondent's disallowance of those exemptions has been conceded by petitioners.
2. U.S. Const. art. VI: * * * * * 2. This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every State shall be bound thereby, any thing in the Constitution or laws of any State to the contrary notwithstanding. * * * * * ↩
3. All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue. ↩
4. SEC. 61. GROSS INCOME DEFINED. (a) General Definition.--Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items: (1) Compensation for services, including fees, commissions, and similar items; * * * * *↩
5. / "A noncompetent Indian is one who holds allotted lands only under a trust patent and may not dispose of his property without the approval of the Secretary of the Interior. It does not denote mental incapacity." Stevens v. Commissioner,452 F.2d 741, 742, fn. 1 (9th Cir. 1971), affg. in part and revg. in part 52 T.C. 330 (1969), supplemented by 54 T.C. 351↩ (1970).