2006 OK CIV APP 21

**In the Matter of the GROSS PRODUCTION AND PETROLEUM EXCISE TAX PROTEST OF Rudolph BRUNER.**

**Rudolf Bruner, Protestant/Appellant,**

v.

**State of Oklahoma ex rel. Oklahoma Tax Commission, Respondent/Appellee.**

**No. 100,536.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Sept. 20, 2005.

Rehearing Denied Nov. 14, 2006.

Certiorari Denied Feb. 21, 2006.

Ronald J. Saffa, Reece B. Morrel, Paul R. Hodgson, Morrel, West, Saffa, Craige & Hicks, Inc., Tulsa, OK, for Protestant/Appellant.

Douglas B. Allen, General Counsel, Cara S. Nicklas, Assistant General Counsel, Oklahoma Tax Commission, Oklahoma City, OK, for Respondent/Appellee.

Opinion by RONALD J. STUBBLEFIELD, Judge (sitting by designation).

¶ 1 This is an appeal by Rudolf Bruner (Taxpayer), a full-blood Creek Indian, from order of the Oklahoma Tax Commission (OTC) finding his application for a tax refund barred in part by a statute of limitations. Upon this Court's order, the case was orally argued on May 23, 2005. Based on review of the record on appeal, argument made to the Court, and applicable law, we affirm the appealed order.

## FACTS AND PROCEDURAL HISTORY

¶ 2 On October 31, 1997, Taxpayer filed an application with the OTC seeking refund of gross production and petroleum excise taxes paid for the years 1989 through 1994. The total tax liability was $115,744.02 plus interest. Taxpayer based his refund claim on the fact that the oil production was from restrict-

ed Indian land he had inherited from his father, who had in turn inherited it from his father, Miller Bruner, a full-blood Creek Indian. Miller Bruner received the property as an allotment on September 25, 1903.

¶ 3 On February 4, 1998, the OTC notified Taxpayer of its decision to disallow the refund claim, relying on the federal Act of May 10, 1928, 45 Stat. 495, and 68 O.S. Supp.1994 §§ 1001 and 1101.

¶ 4 Taxpayer protested the denial and demanded a hearing. The evidence of record shows the following facts, which the parties do not dispute:

On September 25, 1903, the NW/4 of the SW/4 of the property was allotted to Miller Bruner as his homestead, and the E/2 of the W/4 and the SW/4 of the SW/4 of the property was allotted to him, as surplus.

Miller Bruner was enrolled as a full-blood Creek Indian.

Miller Bruner died May 15, 1903, seized of the above restricted property which descended to Dick (Richard) Bruner, a full-blood Creek Indian.

Dick Bruner died on September 19, 1981, seized of the above restricted property which descended to Rudolph Bruner, Randolph Bruner and Richard Bruner, Jr., one-third (1/3) each.

Rudolph Bruner, Randolph Bruner and Richard Bruner, Jr. are restricted full-blood Creek Indians. The lands remain today Indian lands that are restricted from alienation by Acts of Congress.

The case was heard by an Administrative Law Judge (ALJ), who first ruled on a mo-

tion to dismiss filed by the OTC. The ALJ overruled the motion to dismiss, concluding that the OTC did have jurisdiction to hear the specific argument raised by Taxpayer, pursuant to 68 O.S.2001 § 207 and the Oklahoma Administrative Code. However, the ALJ concluded that, even if the lands involved were exempt from taxation, 68 O.S. Supp.1994 § 1008[1] would apply to Taxpayer's refund claim and, in essence, provide a three-year limitation period.[2] Thus, the ALJ ruled that the portion of the refund claim relating to taxes paid prior to October 31, 1994, was barred. The ALJ allowed the remainder of Taxpayer's claim, for taxes paid after October 31, 1994, to proceed, although counsel for both sides indicated at oral argument that the matter was apparently on hold awaiting disposition of this appeal. After the ALJ denied Taxpayer's motion to reconsider, the OTC adopted the ALJ's Findings of Fact, Conclusions of Law and Recommendation as its order. Taxpayer appeals that decision.[3]

## STANDARD OF REVIEW

¶ 5 "This Court will review the entire record made before an administrative agency acting in its adjudicative capacity to determine whether the findings and conclusions set forth in the agency order are supported by substantial evidence." *In re Excise Tax Protest of Arkla, Inc.*, 1996 OK CIV APP 5, ¶ 5, 919 P.2d 1151, 1154. "If the record contains substantial evidence in support of the facts on which the decision is based and the order is otherwise free of error, the order will be affirmed." *Id.* In this instance, where there is no dispute of the basic facts, the issue is whether the order of

1. Section 1008 has a provision specific to the facts of this dispute, providing that, in cases of overpayment or erroneous payment of gross production tax "on account of the production being derived from restricted Indian lands ... and therefore exempt from taxation, the Oklahoma Tax Commission is authorized to refund any such over-paid, duplicate or erroneously paid gross production taxes, where an application for such refund is made within three (3) years from the date of the payment thereof...."

2. Section 1008 applies to gross production taxes, while 68 O.S.1991 § 1106 makes Section 1008's provisions also applicable to excise taxes on oil.

3. Although part of Taxpayer's claim for refund is still pending before the OTC, 68 O.S.2001

§ 225(A) provides: "Any taxpayer aggrieved by any order, ruling, or finding of the Oklahoma Tax Commission directly affecting the taxpayer or aggrieved by a final order of the Tax Commission issued pursuant to subsection (g) of Section 221 of this title may appeal therefrom directly to the Supreme Court of Oklahoma." This is a provision of the Uniform Tax Procedure Code, 68 O.S.2001 §§ 201 through 263, which applies to "all state taxes." 68 O.S.2001 § 201. Certainly Taxpayer has been aggrieved by the order of the OTC holding that Taxpayer's claim for taxes paid prior to October 31, 1994, was barred by the statute, and therefore we find it to be an appealable order.

the OTC is free of legal error. A protesting taxpayer has the burden of proving that a tax assessment is erroneous. *Id.*

## DISCUSSION OF ISSUES

■ ¶ 6 Although the ruling which resulted in this appeal is based on a statute of limitations, the real question is whether the State of Oklahoma has authority to levy gross production tax and excise tax on oil and gas produced from restricted Indian land. That is so because an action by a restricted Indian to recover an illegal or unconstitutional levy of taxes would not be subject to a statute of limitations. *Nash v. Wiseman,* 227 F.Supp. 552, 556 (W.D.Okla. 1963).

## I. Legality of the Taxes

¶ 7 Taxpayer argues that the Act of May 10, 1928, is unconstitutional as applied to him because he had a vested right to the exemption from taxation applicable to Miller Bruner's allotment of 1903. He also argues that the collection of the illegal tax constitutes a breach of fiduciary duty which would not be subject to a statute of limitations.

¶ 8 The OTC asserts that the taxes are not illegal—that they are permissible under the Act of May 10, 1928, and imposed by Oklahoma Statutes 68 O.S. Supp.1994 §§ 1001 and 1101.

¶ 9 The Act of May 10, 1928, in pertinent, part provides:

> That all minerals, including oil and gas, produced on or after April 26, 1931, from restricted allotted lands of members of the Five Civilized Tribes in Oklahoma, or from inherited restricted lands of full-blood Indian heirs or devisees of such lands, shall be subject to all State and Federal taxes of every kind and character the same as those produced from lands owned by other citizens of the State of Oklahoma; and the Secretary of the Interior is hereby authorized and directed to cause to be paid, from the individual Indian funds held under his supervision and control and belonging to the Indian owners of the lands, the tax or taxes so assessed against the royalty inter-

est of the respective Indian owners in such oil, gas, and other mineral production.

The State of Oklahoma imposed gross production tax on oil by Section 1001, and excise tax on oil by Section 1101. Clearly, the federal act provides authority for levy of these two specific taxes against allotted Indian lands. The issue thus becomes whether the Act of May 10, 1928, constituted an illegal breach of previous agreements granting rights and interests to the people of the Creek Nation.

### A. Rights under the Creek/United States Agreements

■ ¶ 10 Taxpayer cites *Carpenter v. Shaw,* 280 U.S. 363, 50 S.Ct. 121, 74 L.Ed. 478 (1930), for the holding that the taxation exemptions conferred upon allottees by the Atoka agreement were "property rights within the protection of the 5th Amendment and not subject to repeal by later congressional legislation." The problem with the argument is that the agreements between the United States and the Muscogee (Creek) Nation do not provide for perpetual taxation exemptions, and, as we shall discuss, the Act of May 10, 1928, did not repeal the tax exemption.

■ ¶ 11 A tax exemption based on Taxpayer's status as an Indian must come from agreements between the Tribe/Nation and the United States Government. *See Marlin v. Lewallen,* 276 U.S. 58, 63–64, 48 S.Ct. 248, 250, 72 L.Ed. 467 (1928). In regard to the Creek Nation, there were two agreements with the United States—the Original Creek Agreement of March 1, 1901, 31 Stat. 861, and a Supplemental Agreement of June 30, 1902, 32 Stat. 500. From review of those agreements it is apparent they were comprehensive and intended to supplant preceding piecemeal legislation. *Bruner v. United States,* 340 F.Supp.2d 1204, 1219 (N.D.Okla. 2004) (citing *Marlin,* 276 U.S. at 63, 48 S.Ct. at 250). The Original Creek Agreement of 1901 sets forth the specific terms under which Miller Bruner took title to the property. Section 7 of the Original Agreement provides that forty acres of every allotment shall be nontaxable *and inalienable for twenty-one years.* Similarly, Section 16 of the

Supplemental Creek Agreement of 1902 required each citizen to select from his allotment forty acres *which would be nontaxable for twenty-one years from the date of the deed.* In addition, it is not disputed that the Homestead Deed provides that the forty acres would be nontaxable and inalienable for twenty-one years. However, Taxpayer does not point to any language in the Agreements, the Homestead Deed, or the Allotment Deed making the land nontaxable *so long as it is restricted.*

¶ 12 It is true that various acts of Congress extended the restriction on alienation of the property beyond the twenty-one years provided in the Original and Supplemental Creek Agreements. For example, the Act of Congress dated August 11, 1955, 69 Stat. 666, extended the restrictions on alienation for the owner's life. *Bruner,* 340 F.Supp.2d at 1219–20. But once again, Taxpayer does not point to any act that extended the tax exemption on lands restricted from alienation to the heirs of Richard Bruner, Sr.

¶ 13 It is important to note that Congress did not subject the minerals produced on the land here at issue to state and federal taxation until April 26, 1931, *by passage of the Act of Congress dated May 10, 1928.* Miller Bruner's deeds are dated October 22, 1903; twenty-one years from 1903 is 1924. Consequently, the twenty-one-year tax exemption provided under the Original and Supplemental Creek Agreements expired well before Congress enacted the Act of May 10, 1928. *Id.* at 1220. The Act did not repeal the exemption.

¶ 14 From our review we do not find that the agreements relating to allotment, between the United States and the Muscogee (Creek) Nation, granted a perpetual exemption from property taxation.

### B. Tax Exemption vs. Restriction on Alienation

¶ 15 Taxpayer argues that the continuing restriction on alienation of the property requires that the tax exemption continue. The United States Supreme Court has stated that the restriction and exemption "go hand in hand." *Superintendent of Five Civilized Tribes v. Comm'r of Internal Revenue,* 295

U.S. 418, 420, 55 S.Ct. 820, 821, 79 L.Ed. 1517 (1935). However, the high court in *Superintendent* actually concluded that the suggestion that exemption must be inferred from acts creating restrictions on alienation was not well founded, and that "exemption could not be implied merely because of the restrictions upon the Indian's power to alienate." *Id.* at 421, 55 S.Ct. at 822. Restrictions upon alienation and non-taxability are distinct concepts, *Jones v. Taunah,* 186 F.2d 445, 446 (10th Cir.1951), and as such Congress could maintain one without the other. Indeed, that is exactly what was legislated by the Agreements that provide for alienation restrictions and tax exemption for twenty-one years, the Act of May 10, 1928, that recognized an end to the tax exemption, and later acts of Congress that extended the restrictions on alienation. As one commentator has stated: "The theory upon which restricted lands are held nontaxable does not apply after [May 10, 1928]." W.F. Semple, *Oklahoma Indian Land Titles Annotated,* § 486 (1952). Therefore, we reject Taxpayer's attempt to link tax exemption with restriction on alienation.

### II. Application of 68 O.S.2001 § 2373

■ ¶ 16 Taxpayer's final argument is that the OTC erred by not applying 68 O.S.2001 § 2373 to his refund request. Section 2373 in pertinent part provides:

> If, upon any revision or adjustment, including overpayment or illegal payment on account of income derived from tax-exempt Indian land, any refund is found to be due any taxpayer, it shall be paid out of the "Income Tax Withholding Refund Account", created by Section 2385.16 of this title, in the same manner as refunds are paid pursuant to such section.
>
> The information filed, reflecting the revision or adjustment, shall constitute the claim for refund.
>
> Except as provided in subsection H of Section 2375 of this title, the amount of the refund shall not exceed the portion of the tax paid during the three (3) years immediately preceding the filing of the claim, or, if no claim was filed, then during the three (3) years immediately preceding the allow-

ance of the refund. *However, this three-year limitation shall not apply to the amount of refunds payable upon claims filed by members of federally recognized Indian tribes or the United States on behalf of its Indian wards or former Indian wards, to recover taxes illegally collected from tax-exempt lands. In the case of any refund to a member of a federally recognized Indian tribe or to the United States on behalf of its Indian wards or former Indian wards, to recover taxes illegally collected on bonus payments from oil and gas leases located on tax-exempt Indian lands pursuant to this section, the Tax Commission shall pay interest on all refunds issued after January 1, 1996, at the rate of six percent (6%) per annum from the date of payment by the taxpayer to the date of the refund.*

(Emphasis added.) Taxpayer claims this statute should be applied to his claim for refund.

¶ 17 The OTC responds by pointing out that the statute is found in Article 23 of the Revenue and Taxation statutes, which is the *Income Tax Code* of this state. Indeed, the language of the first paragraph of the law indicates that it applies to situations involving revision or adjustment of "income" tax. It is the rule that "[t]he plain meaning of statutory language is conclusive except in the rare case in which literal construction will produce a result demonstrably at odds with the intention of the Legislature." *Bishop v. Takata Corp.*, 2000 OK 71, n. 30, 12 P.3d 459, 466. We must presume that the Legislature, when it enacted Section 2373, was aware of its other taxation laws, including Sections 1001 and 1101. It would have been simple enough for the Legislature to delineate the scope of Section 2373 to include gross production and excise taxes, but it did not do so. Because the basic rule of statutory construction is to discover the intent of the Legislature and, if possible, construe statutes to render them consistent, *Lucas v. State ex rel. Oklahoma Department of Human Services*, 2000 OK CIV APP 79, ¶ 5, 9 P.3d 89, 91, we must conclude that the differences between Sections 1001 and 1101 and Section 2373 reflect the Oklahoma Legislature's intent to treat claims for refunds for income tax differ-

ent than those for gross production and petroleum excise taxes. Therefore, we find that Section 2373 does not apply to Taxpayer's claim.

## CONCLUSION

¶ 18 We do not find Taxpayer's contentions of error availing of reversal. The tax exemption granted by the original agreements between the Creek Nation and the United States provided only for tax exemption for a twenty-one year period, which had expired by the time Congress passed the Act of May 10, 1928. A continuation of restrictions on alienation of land did not continue the taxation exemption. Finally, the provisions of 68 O.S.2001 § 2373 do not apply to this action for refund of gross production and oil excise taxes. Accordingly, the judgment of the Oklahoma Tax Commission is affirmed.

¶ 19 AFFIRMED.

REIF, P.J., and WISEMAN, J., concur.