CARL A. AND VIRGINIA CHARLES, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Charles v. Commissioner
Docket No. 16858-89
United States Tax Court
T.C. Memo 1991-635; 1991 Tax Ct. Memo LEXIS 683; 62 T.C.M. (CCH) 1582; T.C.M. (RIA) 91635; December 23, 1991, Filed *683 Decision will be entered under Rule 155. Petitioner, an Alaskan native, received $ 21,000 for the sale of land which the Bureau of Indian Affairs (BIA) oversees for Alaskan natives. Petitioner's funds were held by BIA for 10 days, and then distributed to petitioners. Respondent concedes the $ 21,000 is not income to petitioner. During the 10 days BIA held the $ 21,000, it was invested in a BIA account. The Interior Department Supplemental Appropriations Act, Pub. L. 97-257, 96 Stat. 818 (1982), directed BIA to distribute the funds in certain BIA accounts. Accordingly, because of petitioner's $ 21,000 sale of land, BIA made an additional payment to petitioner equal to $ 41,253.69 and $ 363.03 of interest thereon. Petitioner argues the $ 41,253.69 is a gift excludable from income. Held, the $ 41,253.69 is taxable income to petitioner. P argues alternatively that the statute of limitations bars the assessment on the grounds that petitioner constructively received the proceeds in years now barred. Held further, there was no earlier constructive receipt of the payment. Daniel R. Cooper, Jr., for the petitioners. Stephen P. Baker, for the respondent. COLVIN, *684 Judge. COLVIN
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in petitioners' Federal income tax of $ 15,507.61 for 1985, and additions to tax of $ 768.38 for negligence under section 6653(a)(1), 50 percent of the interest due on the negligence portion of any underpayment under section 6653(a)(2), and $ 3,841.90 for substantial understatement of income tax under section 6661(a). Respondent has conceded the additions to tax. The sole issue to be decided is whether the distribution of $ 41,616.72 by the United States Department of Interior, Bureau of Indian Affairs (BIA), is taxable income to petitioner. We hold that it is. All references to petitioner in the singular are to Carl A. Charles. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts are stipulated and are so found. 1. Petitioners and Sale of Alaska Native Lands
Petitioners are husband and wife who resided in Fairbanks, Alaska, when they filed their petition. Petitioner is an Alaskan native *685 born on July 17, 1930. He is a member of the Dot Lake Village. He attended school through the eighth grade. He was unable to attend high school at Mt. Edgecumbe Indian School because there was not enough money to pay for his transportation. Petitioner sold a parcel of property which the BIA oversees for Alaskan natives (restricted property) to George Farren in January 1980. Proceeds from the sale were required to be processed through the BIA. The $ 21,000 was entered on an individual Indian account ledger on January 14, 1980, as a suspense item in the name of George Farren for petitioner's benefit. The suspense account was similar to an escrow account. A deed was issued to Mr. Farren when the sale closed. On January 24, 1980, the $ 21,000 was transferred from the suspense account to an Individual Indian Money Account (IIM account) in petitioner's name. However, he was still required to apply to the agency superintendent to receive the money from the account. Petitioner applied for disbursement of the $ 21,000. His request was approved and the $ 21,000 was paid to him on January 25, 1980. The parties have stipulated that the $ 21,000 distributed to petitioner was a nontaxable *686 distribution. 2. Indian Money Proceeds of Labor Accounts
The 10 days of interest earned on the $ 21,000 was transferred to the BIA's Indian Money Proceeds of Labor (IMPL) account for the Fairbanks agency office. Interest earned on Indian funds in escrow did not, by law, follow the principal. The interest became the property of the United States and could be used by the BIA for educational or other purposes for the benefit of the general Indian population. The IMPL account included interest from other individual and tribal accounts over a long period of time. The BIA seldom spent any of its accumulated IMPL funds. The BIA's Fairbanks office's share of the total IMPL fund had grown to more than $ 56,000 by 1985. Congress enacted legislation to end the BIA practice of accumulating IMPL funds. The 1982 Interior Department Appropriations Act, Pub. L. 97-100, 95 Stat. 1391 (1981), and the Supplemental Appropriations Act, Pub. L. 97-257, 96 Stat. 818 (1982) (the Acts), required the BIA to determine ownership, make calculations, and distribute to Indians funds which had been in IMPL accounts. To implement the Acts, the BIA developed a criteria to determine who was eligible *687 for distribution of the IMPL funds, and a formula to determine the amount of any distribution. Only fund participants who had a deposit during the 6-year period ending September 30, 1982, received a share of the money. The BIA formula prescribed in 25 C.F.R. 114.5 (1991) for determining the amount each eligible participant was to receive is as follows: Dollars transferred into an account / Total dollars transferred by agency into all accounts = Percent share for that account The formula did not consider the length of time the principal was in the account, or the interest earned on the principal while in the account. The BIA concluded that, under 25 C.F.R. 114.5 (1991), $ 41,253.69 was petitioner's share of the Fairbanks Agency IMPL escrow account as of September 30, 1982. Petitioner received almost three-fourths of the money even though his $ 21,000 had been in a BIA account for only 10 days. The BIA calculated interest owed to petitioner for his $ 41,253.69 share of the Fairbanks IMPL escrow account to be $ 363.03 for the month of October 1985, the time between the statutory cut off date and the approximate date of expected distribution to petitioner. The BIA notified petitioner *688 of the funds allocated to him. On October 19, 1985, petitioners signed an Individual Acceptance and Determination of Release of Claims in which he accepted the conclusion that $ 41,253.69 was his share of the Fairbanks Agency IMPL Escrow Account as of September 30, 1982, and that he released and waived for himself and his heirs any and all claims against the United States relating to the unobligated balance of IMPL accounts as of the close of business on September 30, 1982. Petitioner's $ 41,253.69 was credited to his IIM account on October 31, 1985, and he received it, plus interest, on November 8, 1985. The BIA issued a Form 1099 for that amount to petitioner. On March 28, 1988, petitioner wrote the BIA to ask whether this amount was taxable. Petitioner's letter indicated that a lady at the BIA office told him that the money was not taxable because it was BIA money. The BIA's reply letter dated June 1, 1988, did not state whether the money was taxable. Petitioner again wrote the BIA on June 25, 1988, asking whether the $ 41,253.69 was taxable. The BIA wrote him on October 31, 1988, and stated that it was taxable. Petitioners did not report the $ 41,616.72 on their 1985 *689 Federal individual income tax return. OPINION In the notice of deficiency respondent determined that petitioners received $ 41,616.72 of interest income taxable under section 61. Respondent now contends that the $ 363.03 is taxable interest and the remaining $ 41,253.69 is an accession to wealth not excludable from income. Petitioners concede that the $ 363.03 interest is taxable income, but argue that the $ 41,253.69 distribution is not taxable. First, they argue that it is excludable from income as a gift. Second, they argue that the statute of limitations bars the assessment due to petitioner's earlier constructive receipt of the proceeds in years now barred. 1. Whether the $ 41,253.69 Payment was a Gift
Petitioners concede that the IMPL distribution of $ 41,616.72 to petitioner was in fact a windfall and an accession to wealth. See Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431, 99 L. Ed. 483, 75 S. Ct. 473 (1955) (gross income includes accessions to wealth); Foley v. Commissioner, 87 T.C. 605, 608 (1986). Section 61 is intended to tax all gains, except those specifically exempted. Commissioner v. Glenshaw Glass Co., supra at 430; *690 Superintendent of Five Civilized Tribes v. Commissioner, 295 U.S. 418, 419-420, 79 L. Ed. 1517, 55 S. Ct. 820 (1935); Foley v. Commissioner, supra.Petitioners contend that the $ 41,253.69 is specifically excludable from income as a gift under section 102. Section 102(a) provides that gross income does not include the value of property acquired by gift. Whether a transfer is a gift is a question of fact. Commissioner v. Duberstein, 363 U.S. 278, 285, 4 L. Ed. 2d 1218, 80 S. Ct. 1190 (1960). Both parties cite Commissioner v. Duberstein, supra, for the elements of a gift. In Duberstein, the Supreme Court stated: A gift in the statutory sense * * * proceeds from a "detached and disinterested generosity," Commissioner v. LoBue, 351 U.S. 243, 246, 100 L. Ed. 1142, 76 S. Ct. 800; "out of affection, respect, admiration, charity or like impulses." Robertson v. United States, supra [343 U.S. 711, 714 (1952)], at 714. And in this regard, the most critical consideration, as the Court was agreed in the leading case here, is the transferor's "intention." Bogardus v. Commissioner, 302 U.S. 34, 43, 82 L. Ed. 32, 58 S. Ct. 61. * * *
Commissioner v. Duberstein, supra at 285-286. *691 Thus, respondent contends that the donor's intent governs characterization as a gift, and the donative intent must result from a detached disinterested generosity out of affection, respect, admiration, charity, or like impulse. Commissioner v. Duberstein, supra at 285. Petitioner argues that the distribution was a gift because he did not earn it and he was not otherwise entitled to the amount that he received. Petitioner also argues that before the enactment of the Supplemental Appropriations Act, Pub. L. 97-257, 96 Stat. 818 (1982), the Government had no legal obligation to pay interest on the IMPL accounts. United States v. Mescalero Apache Tribe, 207 Ct. Cl. 369, 518 F.2d 1309 (1975). Petitioners concede that "one would be hard put to find that there were any elements of 'affection, respect, admiration, charity or like impulses.'" Thus, petitioners do not contend and we do not find that the distribution of IMPL funds to petitioner was made with affection, respect, admiration charity or like impulse as the donative intent. The statute and legislative history do not indicate a donative intent. Rather, the statute provides, *692 Acceptance of a determination by the Secretary and the transfer of funds under this provision shall constitute a complete release and waiver of any and all claims by the beneficiary against the United States relating to the unobligated balance of IMPL accounts as of the close of business on September 30, 1982.
Pub. L. 97-257, 96 Stat. 839. Thus, Congress required a release from claims against the fund. A payment is not usually out of disinterested and detached generosity if the payor requires and the payee gives a waiver from further claim as part of the payment. See Blum v. Higgins, 150 F.2d 471 (2d Cir. 1945) (no constructive receipt where prerequisite is surrender of valuable right). Consequently, we conclude that the distribution to petitioner was not a gift for Federal tax purposes. Commissioner v. Duberstein, supra, This case is somewhat analogous to Greisen v. United States, 831 F.2d 916 (9th Cir. 1987), where the Ninth Circuit held that Alaska's distribution of energy revenues to its State residents was not a gift exempt from Federal taxation. In analyzing the statutory purpose, the court concluded *693 that the distribution was made from a sense of duty and moral obligation rather than a donative intent. Petitioners argue that even if Congress did not intend for the distribution to be a gift, the BIA's implementation of the program led to a gift for petitioners. More specifically, petitioners argue that under the provisions of the statute the BIA had a legal obligation to make a distribution to the owners of the fund, thus to all contributing escrow depositors in relation to their contribution to the IMPL account in both amount and time on deposit for the entire existence of the IMPL fund. Instead, petitioners argue that the BIA only considered the principal amount of the deposits made within the 6-year claim period without considering the time that the principal amount was on deposit or any deposits made before the 6-year claim period. This theory is without merit. Commissioner v. Duberstein, supra, and Greisen v. Commissioner, supra, require donative intent which we have not found. 2. Whether the $ 41,253.69 Payment was Constructively Received Before 1985
Petitioner points out that the legislation leading to the making of the $ 41,253.69 *694 payment to them was enacted in 1982, and that the final BIA rules implementing the statute became final on November 21, 1983. Petitioners assert that only the calculation of petitioner's share remained to be accomplished after that date. Petitioners contend that the calculation was not difficult as there were only 10 potential beneficiaries of the Fairbanks IMPL account. Thus, petitioners argue that in late 1983 or at the latest in early 1984, petitioner had the right to withdraw funds. Under this theory, petitioners argue that petitioner constructively received the money at issue in 1983 or 1984. Respondent does not argue that assessment of petitioners' 1983 or 1984 taxable years are still permitted. However, respondent does argue that petitioners received the $ 41,253.69 in 1985, and should not be considered to have constructively received it in 1983 or 1984. The doctrine of constructive receipt treats as taxable to a cash-basis taxpayer income not yet reduced to possession but is credited to his account or otherwise set apart so that it is available to the taxpayer without substantial limitations or restrictions. Minor v. United States, 772 F.2d 1472, 1473-1474 (9th Cir. 1985); *695 sec. 1.451-2(a), Income Tax Regs. As noted, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions. Sec. 1.451-2(a), Income Tax Regs. Constructively received income is taxable in the year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given. Sec. 1.451-2(a), Income Tax Regs.
In Minor v. United States, supra, the Ninth Circuit held that if a corporation merely credits funds to an employee on its books but does not make those funds available to the employee, there has been no constructive receipt. We are not persuaded by petitioners' theory. The funds were not credited to his account until 1985, just before they were distributed. Petitioner was required to satisfy several restrictions before he could receive his distribution. Before petitioner was allowed to draw on the IMPL funds, he had to: (1) Acquiesce and accept the BIA computation of his share of the fund, (2) release and waive for *696 himself and his heirs and assigns all claims against the United States relating to the IMPL funds, and (3) acquire BIA permission to draw on the funds. The calculation of petitioner's share of the IMPL fund first appears in the record as a tentative unagreed amount on October 11, 1985, when the BIA issued the waiver and release form. The waiver and release form provided that petitioner's share would be transferred to his IIM account as soon as possible after October 28, 1985. The BIA credited $ 41,253.69 to his IIM account on October 31, 1985. Under the BIA formula, the earliest date that the computation of shares could have been made assuming that all other claimants had received and completed their waiver forms was October 19, 1985, the date that petitioner executed his waiver and release. This is because if any of the other nine Fairbanks Agency claimants had failed to respond or responded negatively to the proposed distribution, the remaining Fairbanks claimants, including petitioner, would be affected. Consequently, the final amount of petitioner's share could not have been computed before he signed the waiver and release form. On this record we conclude that petitioner *697 constructively and actually received the $ 41,253.69 IMPL distribution in 1985. To reflect concessions and the foregoing, Decision will be entered under Rule 155.