**Bentley L. HOLT and Bonnie J. Holt, Petitioners,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 18302.**

United States Court of Appeals Eighth Circuit.

Aug. 1, 1966.

William Howard Payne, Washington, D. C., for petitioners. Arthur P. Scibelli,

Washington, D. C., was with him on the brief.

Carolyn R. Just, Atty., Dept. of Justice, Washington, D. C., for respondent. Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, and Melva M. Graney, Attys., Dept. of Justice, Tax Division, Washington, D. C., were with her on the brief.

Before VAN OOSTERHOUT, BLACKMUN and GIBSON, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

The issue, apparently one of first impression, presented by the · taxpayers' petition for review of the decision of the Tax Court, reported at 44 T.C. 686, is whether a noncompetent Indian holding a grazing permit on tribal land is subject to federal income taxation upon profits allocable to such lands arising from a cattle operation financed under a statutory rehabilitation program for Indians. The Tax Court held such income to be taxable. We affirm.

The material facts are undisputed and are fully and fairly stated in the Tax Court opinion. The petitioners are Bentley L. Holt and Bonnie J. Holt, his wife. Mrs. Holt is involved only because she filed a joint tax return with her husband. Mr. Holt will be referred to as taxpayer hereinafter.

The Tax Court determined deficiencies as follows: 1956, $16.00; 1957, $119.00; 1958, $484.22.

Taxpayer is a full-blooded Indian. · He is a duly enrolled, allotted and recognized member of the Cheyenne River Tribe of Sioux Indians. He is classified in Indian terminology as a noncompetent ward of the federal government.

Taxpayer derived income from ranching and farming operations on 3,520 acres of land located on the Indian reservation, such land falling in three categories, to wit, (1) 320 acres held in fee simple; (2) 1440 acres specifically allotted to taxpayer pursuant to federal law and by tribal constitution; (3) 1760 acres of tribal land held in trust by the United States for the benefit of the tribe upon which

taxpayer in the years in question held an authorized grazing permit for which he paid an agreed consideration.

The income allocable to the land in categories (1) and (2) above is not in dispute in this appeal. Taxpayer concedes liability and has paid income tax on profits derived from his fee title land. The Government conceded, upon the basis of Squire v. Capoeman, 351 U.S. 1, 76 S.Ct. 611, 106 L.Ed. 883, that income from the category (2), allotted land, is exempt from tax. The tax deficiencies here determined are based entirely upon the agreed profit derived from the category (3) land—the tribal land upon which taxpayer held a grazing permit.

Taxpayer urges that he is entitled to a reversal for the following reasons:

(1) Income derived by a qualified Indian from tribal lands is exempt.

(2) As a member of the tribe, he is a co-owner of the tribal land and is entitled to exemption from income derived therefrom.

(3) The livestock, other property, or money furnished to a rehabilitation client of the Rehabilitation Program of the Cheyenne River Sioux Tribe is impressed with the trust and such property, and any increase thereof, is exempt from federal income tax.

■ Before discussing the specific points raised, we shall consider general principles applicable to all points. The general rule is that the reach of income tax statutes is broad; that exemptions from taxation are ·matters of legislative grace and that exemptions must be construed with restraint in light of the policy to tax income comprehensively. Commissioner of Internal Revenue v. Jacobson, 336 U.S. 28, 49, 69 S.Ct. 358, 93 L.Ed. 477, 7 A.L.R.2d 857; United States v. Stewart, 311 U.S. 60, 71, 61 S.Ct. 102, 85 L.Ed. 40; Deputy v. Du Pont, 308 U.S. 488, 493, 60 S.Ct. 363, 84 L.Ed. 416; Heiner v. Colonial Trust Co., 275 U.S. 232, 235, 48 S.Ct. 65, 72 L.Ed. 256.

■ Courts have recognized that treaties and statutes relating to the right of noncompetent Indians should be liberally construed in favor of Indians. Squire v. Capoeman, 351 U.S. 1, 6–7, 76 S.Ct. 611; Carpenter v. Shaw, 280 U.S. 363, 367, 50 S.Ct. 121, 74 L.Ed. 478. However, such principle comes into play only if such statute or treaty contains language which can reasonably be construed to confer income exemptions.

Blackbird v. Commissioner of Internal Revenue, 10 Cir., 38 F.2d 976, supports taxpayer's position asserted here that the broad language of the income tax statutes does not reach Indians. In Superintendent Five Civilized Tribes etc. v. Commissioner of Internal Revenue, 295 U.S. 418, 55 S.Ct. 820, 79 L.Ed. 1517, the Supreme Court observes that *Blackbird* does not harmonize with the holding of Choteau v. Burnet, 283 U.S. 691, 51 S.Ct. 598, 75 L.Ed. 1353, and holds that income on trust funds held by the United States for a noncompetent Indian are not exempt from income taxation. The Court holds:

"The general terms of the taxing act include the income under consideration and if exemption exists it must derive plainly from agreements with the Creeks or some act of Congress dealing with their affairs.

\* \* \* \* \*

"The taxpayer here is a citizen of the United States, and wardship with limited power over his property does not, without more, render him immune from the common burden." 295 U.S. 418, 420–421, 55 S.Ct. 820, 822.

The holding in Superintendent etc. v. Commissioner etc. is quoted and approved in Federal Power Commission v. Tuscarora Indian Nation, 362 U.S. 99, 116, 80 S.Ct. 543, 4 L.Ed.2d 584.

Both parties place considerable reliance upon Squire v. Capoeman, supra. Since *Capoeman* involved only allotted lands, the Supreme Court did not have before it nor did it expressly decide the precise issue here raised. Isolated statements may be found in *Capoeman* favoring the contentions of each of the parties. The Court in *Capoeman* unequivocally states: "We agree with the Government that Indians are citizens and that in ordinary affairs of life, not governed by treaties

or remedial legislation, they are subject to the payment of income taxes as are other citizens. We also agree that, to be valid, exemptions to tax laws should be clearly expressed." 351 U.S. 1, 6, 76 S.Ct. 611, 615.

Consideration will now be directed to taxpayer's first and second points, which are closely related. It is quite true that *Capoeman* determined that income from allotted lands upon which patent had not issued is not subject to income tax. In that case, the land producing the income had been specifically allotted to the taxpayer. He had a definite interest in particular land. Upon the basis of such interest, he was entitled to a patent when determination of his competency was made. The land here involved which produced the income in controversy is tribal land. Tribal land is held in trust by the United States for the use of the tribe. No individual Indian has title or an enforceable right in tribal property. Choate v. Trapp, 224 U.S. 665, 671, 32 S.Ct. 565, 56 L.Ed. 941; Cherokee Nation v. Journeycake, 155 U.S. 196, 207, 15 S.Ct. 55, 39 L.Ed. 120; Whitefoot v. United States, 155 Ct.Cl. 127, 293 F.2d 658, 662; Minnesota Chippewa Tribe v. United States, 161 Ct.Cl. 258, 315 F.2d 906, 913.

The constitution of the tribe, which is set out in the Tax Court opinion, confers no rights in tribal land upon individual tribe members. Leasing of such land is authorized. Any income derived from tribal land accrues for the benefit of the tribe as a whole.

The issue of whether profits derived by the tribe from tribal land are exempt from income taxation is not here involved. The income in controversy here was that derived by the taxpayer as lessee or permittee under his grazing permit pertaining to tribal land which he obtained from the tribe. While Indians were granted priority on grazing permits, permits could be granted to non-Indians. Unquestionably, income derived from land held under a grazing permit by a non-Indian would be taxable.

In *Capoeman*, the Court determined that specific land was allotted to the taxpayer and found that under the General Allotment Act, the Secretary when satisfied the Indian allottee was competent was required to transfer the fee to the Indian "free of all charge or encumbrance whatsoever." The Allotment Act also provided that after issuance of patent all restrictions as to sale, encumbrance or taxation shall be removed. The Court determined that the imposition of a tax on the gain realized from timber sold and removed from the allotted land would defeat the Government's undertaking in the Allotment Act to deliver the land to the allottee free and clear of encumbrance.

In our present case, no statute or treaty has been called to our attention or found which gives taxpayer any title or right to acquire title in tribal land nor are any such rights conferred upon the individual Indian by the tribal constitution.

The taxation of the taxpayer's individual profit derived from his lease of tribal land cannot possibly represent a burden or encumbrance upon the tribe's interest in such land. The holding of *Capoeman* and a fair reading of the opinion as a whole affords no basis for the income tax exemption of taxpayer's earnings from 1760 acres of leased tribal lands. See Commissioner of Internal Revenue v. Walker, 9 Cir., 326 F.2d 261, 264.

Finally, taxpayer contends that the income is exempt because it was derived from a rehabilitation program set up for members of taxpayer's tribe by Public Law 776, 83d Cong., 68 Stat. 1191. Such contention was properly rejected by the Tax Court for the reasons stated in its opinion.

Public Law 776 provides for compensation to Indians whose land has been taken for the Oahe Dam Reservoir. None of taxpayer's land was taken for such project. The Act in § V appropriates $5,160,000 for the complete rehabilitation of all members of the tribe including members such as the taxpayer who had not

**42**

been directly damaged by the project. Pursuant to the Act, a detailed rehabilitation program to be administered by the tribal council was worked out, approved, and placed in effect. Included therein was a repayment cattle program under which taxpayer obtained a $10,000 loan. The profits here sought to be taxed arose out of taxpayer's cattle operation financed by the cattle loan. We have found no authority which holds that income derived by an Indian from funds borrowed under a rehabilitation program are exempt from income taxation. The statement from *Capoeman* heretofore quoted does cast some implication to the effect that matters governed by treaties or remedial legislation may not be subject to the general rule that Indians, like other citizens, are subject to payment of income taxes. However, this sentence must be read in context with the following sentence, reading, "We also agree that, to be valid, exemptions to tax laws should be clearly expressed," 351 U.S. 1, 6, 76 S.Ct. 611, 615, and with the opinion as a whole.

Public Law 776 contains no express statement exempting income earned by members of the rehabilitation program from income taxation nor can such exemption be fairly implied. The program is designed to provide participants with sufficient capital to operate self-sustaining economic units. Interest is charged on the money loaned and repayment of the principal in installments is required. The fact that the taxpayer has made net income out of his operation in excess of his exemptions is indicative that the plan is fulfilling its purpose. We see nothing unreasonable about taxing profits in the normal way. No inconsistency with the purpose of the rehabilitation act is apparent from the taxation of such income. If the taxpayer had obtained his financing from a bank or other lending agency, there could be no question about his taxability upon the income here in question.

We find no merit in taxpayer's contention that the retention of title to the financed cattle by the tribal council impresses income therefrom with a trust in the nature of a guardian-ward relationship. The title retained is in the tribe as administrator of the project and not the Government. Moreover, the title retention arrangements are in furtherance of ordinary and usual methods of providing security for loans. Under the agreement here involved, the taxpayer can obtain full and unrestricted title to the cattle at any time by payment in full of the loan.

United States v. Rickert, 188 U.S. 432, 23 S.Ct. 478, 47 L.Ed. 532; Dewey County, S. D., v. United States, 8 Cir., 26 F.2d 434; and Warren Trading Post Co. v. Arizona State Tax Commissioner, 380 U.S. 685, 85 S.Ct. 1242, 14 L.Ed.2d 165, cited by the taxpayer, do not support his position. Such cases involve the right of states to tax property on Indian reservations. The basis of such decisions is thus stated in Warren Trading Post Co., p. 691, 85 S.Ct. p. 1246: "And since federal legislation has left the State with no duties or responsibilities respecting the reservation Indians, we cannot believe that Congress intended to leave to the State the privilege of levying this tax."

There can be no question about the power of Congress to levy an income tax upon the income involved in this case. The broad sweep of the income tax statutes reaches such income. There is no treaty or statute expressly or impliedly exempting such income from taxation.

The decision of the Tax Court is affirmed.