**RED LAKE BAND OF CHIPPEWA INDIANS, and Gerald and Luella Brun, Plaintiffs,**

v.

**UNITED STATES of America, and the Commissioner of the Internal Revenue Service, Defendants.**

Civ. No. 4–92–1147.

United States District Court,
D. Minnesota,
Fourth Division.

Aug. 26, 1994.

David Lawrence Sasseville, Lindquist & Vennum, Minneapolis, MN, Mason D. Morisset, Pirtle Morisset Schlosser & Aver, Seattle, WA, for plaintiffs.

John A. Marrella, U.S. Dept. of Justice, Tax Div., Washington, DC, for defendants.

## MEMORANDUM OPINION AND ORDER

### DIANA E. MURPHY, Chief Judge.

This is a tax refund case begun in the United States District Court for the District of Columbia in which plaintiff Red Lake Band of Chippewa (the Tribe) sued on its own behalf and as parens patriae on behalf of its members seeking declaratory and other relief concerning the imposition of federal income tax on income derived from logging activity on tribal trust land. Band members Gerald and Luella Brun also sued on their own behalf seeking a tax refund and other relief. The District of Columbia court granted defendant's motion to dismiss all claims except the Bruns' refund claim. The case was then transferred here pursuant to 28 U.S.C. § 1406(a). Now before the court is defendants' motion for summary judgment.

### I.

When this action was originally filed in the District of Columbia, the Tribe sought a declaratory judgment that the income its members derived from the harvest of timber from Tribal lands is not subject to federal income tax, a permanent injunction enjoining the IRS from assessing or collecting federal income tax on such income, and a remedy in the nature of mandamus to require the Commissioner of Internal Revenue to "recognize and implement tribal members' rights to harvest tribal timber free of federal taxation." Complaint at PP 10.1, 10.2.

On September 24, 1992, United States District Judge Gehard Gesell granted defendants' motion to dismiss the complaint on the basis that "this is not the proper venue for a refund claim and that the court lacks jurisdiction under the Declaration of Judgment and Anti–Injunction Acts because of alternative remedies ...". Order dated September 24, 1992. Later, on October 27, 1992, the court granted in part plaintiffs' motion to Amend the Judgment:

> As to the Brun's refund claim, this Court's Order of September 24, 1992 is vacated and this aspect of the complaint is hereby transferred, pursuant to 28 U.S.C. § 1406(a), to the United States District Court for the District of Minnesota ... to prevent the running of the statute of limitations.
>
> In all other respects plaintiffs' motion to reconsider is denied.

Order dated October 27, 1992. Thus the only claim now before the court is the refund claim of Gerald and Luella Brun.[1]

1. The United States argues that the Commissioner of Internal Revenue should no longer be a

■ The Bruns seek refunds in the amount of \$22,944.06 (Tax Year 1983), \$9,024.45 (Tax Year 1984), and \$4,608.74 (Tax Year 1985). The taxes were assessed on income the Bruns derived from the cutting and sale of timber from tribal lands pursuant to a permit issued by the Tribe. The basis for their refund claim is that the assessment of federal taxes constitutes a "molestation" of the Tribe's right to quiet enjoyment of tribal lands in violation of the Treaty of Greenville. The Bruns cite three treaties which they argue create a federal tax exemption: the Treaty of Greenville, the Treaty of Old Crossing, and the Supplement to Treaty of Old Crossing. In particular the Bruns point to the language in Article V of the Treaty of Greenville which states:

> To prevent any misunderstanding about the Indian lands relinquished by the United States in the fourth article, it is now explicitly declared, that the meaning of that relinquishment is this: The Indian tribes who have a right to those lands, are quietly to enjoy them, hunting, planting, and dwelling thereon so long as they please, without any molestation from the United States ... [Until the Tribe's lands are sold to the United States,] the United States will protect all the said Indian tribes in the quiet enjoyment of their lands against all citizens of the United States.

Treaty of Greenville Article V.[2]

According to their pretrial statement of the case, the Bruns seek a trial on the following issues:

1. The intent of the negotiators of the treaties with the Red Lake Band and particularly the Indian understanding of those treaties.

2. The specific meaning of the following treaty phrases:

   "quietly to enjoy them"

   "without any molestation from the United States"

   "quiet enjoyment"

3. The central importance of timber and logging in the economic life of the Red Lake Band and its members.

Plaintiffs' Pretrial Statement of the Case at 5. The Bruns intend to prove their case by "calling an expert witness in the field of history, ethno-history, or anthropology to testify as to the construction of the treaties and the tribal understanding of the terms of the treaties." *Id.*

## II.

The United States argues that like the income of other citizens, income earned by Indians is subject to federal income tax unless expressly exempted by a treaty or specific statute. It argues exemptions cannot be granted by implication, and that other courts have held that the treaties cited by plaintiffs do not contain any language which could reasonably be interpreted as an express tax exemption.

The Bruns respond that the assessment of federal income taxes on proceeds derived

---

named defendant in this action because a suit for refund of taxes "may be maintained only against the United States and not against any officer or employee of the United States." 26 U.S.C. § 7422(f)(1). Plaintiffs raise no objection and the Commissioner of Internal Revenue should be dismissed as a party.

**2.** Plaintiffs have filed a motion to amend or withdraw an earlier admission. Plaintiffs did not answer a request for admission which stated that they were relying solely on the Treaty of Greenville, the Treaty of Old Crossing, and the Supplement to the Treaty of Old Crossing. Because they did not answer, the admission is deemed admitted under Fed.R.Civ.P. 36(a). Plaintiffs request they be allowed to withdraw the admission or amend it to say:

> Plaintiffs claim for refund is based on all treaties, statutes, congressional acts, executive or-

ders, decided cases and other legal authorities which are pertinent to or support plaintiffs' claim of income tax exemption.

Defendant does not object to this amendment to the extent that it did not intend its requested admission to limit plaintiffs' legal arguments. Defendant has no objection to plaintiffs relying on any of the treaties, statutes, regulations, and Interior Department publications identified in their complaint, pre-trial statement of the case and interrogatory responses.

Granting plaintiffs' motion will not affect the merits of defendant's summary judgment motion because plaintiffs have not cited any treaties besides the three listed above and there is no objection to plaintiffs' citation of statutes, regulations and case law in its responsive papers. Plaintiffs' motion to amend their admission should be granted.

directly from tribal lands upon which the members have a right to dwell under federal treaties and statutes violates the members' rights under those laws. They contend treaties must be construed favorably towards the Indians and according to the understanding of the Indians at the time the treaty was signed. Plaintiffs believe the treaties at issue here must be interpreted in light of the economic importance of timber harvesting to the Band and the historical context of the treaties themselves. The Bruns submit the declaration of Dr. Melissa Meyer in which she discusses the past history of the Band and the various treaties and concludes that the signers of the treaties would not have intended to subject themselves to federal taxation.

■ As a general principle, all income is subject to taxation unless exempted by a statute or rule of law. *HCSC–Laundry v. U.S.*, 450 U.S. 1, 5, 101 S.Ct. 836, 838–39, 67 L.Ed.2d 1 (1980). This principle applies equally to income earned by citizens who are Indians:

> Indians are citizens and that in the ordinary affairs of life, not governed by treaties or remedial legislation, they are subject to the payment of income taxes as are other citizens.

*Squire v. Capoeman*, 351 U.S. 1, 6, 76 S.Ct. 611, 615, 100 L.Ed. 883 (1956).

> The general rule is that the reach of income tax statutes is broad; that exemptions from taxation are matters of legislative grace and that exemptions must be construed with restraint in light of the policy to tax income comprehensively.

*Holt v. Commissioner*, 364 F.2d 38, 40 (8th Cir.1966), *cert. denied*, 386 U.S. 931, 87 S.Ct. 952, 17 L.Ed.2d 805 (1967). Indian treaties are to be construed in favor of the Indian signatories, and ambiguities are to be resolved in their favor. *Id.* (citing *Squire v. Capoeman*, 351 U.S. 1, 6–7, 76 S.Ct. 611, 614–15, 100 L.Ed. 883 (1956)). In cases involving tax exemptions, however, "such principles come into play only if such statute or treaty contains language which can reasonably be construed to confer income exemptions." *Id.* at 40.

■ Plaintiffs cite *Squire v. Capoeman*, 351 U.S. 1, 76 S.Ct. 611, 100 L.Ed. 883 (1956) for the proposition that courts will imply tax exemptions. *Capoeman* involved the taxability of income derived from cutting timber on allotted Indian lands. The court held that timber income from allotted lands was not taxable. *Id.* at 10, 76 S.Ct. at 617. Allotted lands are lands allotted to individual tribe members from the treaty-guaranteed reservation under the General Allotment Act of 1887. *Id.* at 3–4, 76 S.Ct. at 613–14. Under the allotment system the land is held by the United States in trust for the individual Indian for a specified period of years and then is conveyed to him in fee simple. *Id.* Under the terms of the General Allotment Act, the land is conveyed "free of all charge or encumbrance whatsoever". 25 U.S.C. § 348.

Plaintiffs in *Capoeman* were an Indian couple who derived income from the cutting of timber on their allotted land. In deciding plaintiffs' claim for a tax refund, the Court stated:

> We agree with the Government that Indians are citizens and that in the ordinary affairs of life, not governed by treaties or remedial legislation, they are subject to the payment of income taxes as are other citizens. We also agree that, to be valid, exemptions to tax laws should be clearly expressed. But we cannot agree that taxability of respondents in these circumstances is unaffected by the treaty, the trust patent or the Allotment Act.

*Id.* at 6, 76 S.Ct. at 615. The court went on to analyze the meaning of the statutory language of the General Allotment Act:

> Thus, the general words "charge or incumbrance" might well be sufficient to include taxation. But Congress in an amendment to the General Allotment Act, gave additional force to respondent's position. Section 6 of that Act was amended to include a proviso—"That the Secretary of the Interior may, in his discretion, and he is authorized ... to cause to be issued to such allottee a patent in fee simple, and *thereafter* all restrictions as to sale, incumbrance, or taxation of said land shall be removed and said land shall not be liable to the

satisfaction of any debt contracted to prior to the issuing of such patent ...

*Id.* at 7, 76 S.Ct. at 615 (emphasis added). The Court found that the literal language of the proviso to the General Allotment Act:

> evinces a congressional intent to subject an Indian allotment to all taxes only after a patent in fee is issued to the allottee. This, in turn, implies that, until such time as the patent is issued, the allotment shall be free from all taxes, both those in being and those which might in the future be enacted.

*Id.* at 8, 76 S.Ct. at 616. The Court's decision was therefore based on the *express* exemption set forth in the General Allotment Act and its proviso, and not an implied exemption as argued by plaintiffs.

Plaintiffs here did not log on allotted land and do not even argue that the General Allotment Act or its proviso apply. They rely solely on the language of the treaties regarding "quiet enjoyment" and "without molestation".

The Eighth Circuit has already interpreted the Treaty of Greenville as not granting a tax exemption in *Jourdain v. Commissioner*, 617 F.2d 507 (8th Cir.1980), *cert. denied*, 449 U.S. 839, 101 S.Ct. 116, 66 L.Ed.2d 46 (1980). In *Jourdain*, the Eighth Circuit agreed with the decision of the Tax Court which "held that the 'molestation' prohibited by the Treaty of Greenville was interference with the rights of Indians to hunt and otherwise enjoy their land, not the 'right' to be free from federal taxation." *Id.* at 509.

Jourdain was a member of the Red Lake Band of Chippewa and served as chairman of its tribal council. *Id.* at 508. His salary and expenses were paid out of monies dispersed to the Tribe by the Bureau of Indian Affairs from trust funds held for the Tribe's benefit. *Id.* Jourdain failed to report his tribal income and upon being assessed deficiencies, petitioned the Tax Court for a redetermination of his liability. *Id.* Relying on *Squire v. Capoeman*, he argued that the General Allotment Act exempted his tribal income from taxation. *Id.* The Court of Appeals upheld the ruling of the Tax Court that "the *Capoeman* exemption applies only to income de-

rived from allotted land." *Jourdain*, 617 F.2d at 508.

Jourdain next argued that his income was exempt because taxation would be "molestation by the United States" prohibited under the language in the Treaty of Greenville. *Id.* The Court of Appeals rejected this argument and expressly agreed with the rulings of the Tax Court that Indians are subject to taxation unless specifically exempted by treaty or statute and the Treaty of Greenville did not provide a right to be free from taxation. *Id.* at 509.

█ The Bruns argue that the *Jourdain* case is distinguishable from the case at bar because the income which was taxed in *Jourdain* was the salary paid to a tribal official. They argue that their income here was derived directly from the land and therefore should be exempt from taxation under the "quiet enjoyment" and "without molestation" clauses of the treaty. No language in *Jourdain* limits its holding in this way, however, and in fact, other cases which did involve income derived from the land have held no tax exemption existed under the treaty. In *Holt v. Commissioner*, 364 F.2d 38 (8th Cir. 1966), *cert. denied*, 386 U.S. 931, 87 S.Ct. 952, 17 L.Ed.2d 805 (1967), for example, the Court of Appeals refused to extend the *Capoeman* exemption to an individual tribe member's income derived from grazing cattle on tribal lands pursuant to a tribal grazing permit analogous to the timber permit in this case. *Id.* at 42. The source of the income in this case thus does not distinguish it from prior cases finding no tax exemption in the Treaty of Greenville.

█ Plaintiffs' income is not exempt under the express exemption of the General Allotment Act because admittedly it was not derived from allotted lands. The only other source of exemption language identified by plaintiffs is the treaty language which the Court of Appeals has already found to be insufficient to create a federal tax exemption. No exemption may be found in a treaty's silence. *Confederated Tribes of Warm Springs Reservation of Oregon v. Kurtz*, 691 F.2d 878, 882 (9th Cir.1982). "Absent a 'definitely expressed exemption' Indian tribes and their members are subject to federal

taxation." *Id.* Plaintiffs have not identified any other treaty language which they believe creates a tax exemption, and no genuine issues of material fact exist with respect to the Treaty of Greenville. Accordingly, defendants' motion for summary judgment should be granted.

LET JUDGMENT BE ENTERED ACCORDINGLY.