# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-2923
_____

Frank W. Bibeau

*Appellant*

v.

Commissioner of Internal Revenue

*Appellee*
_____

United States Tax Court
_____

Submitted: June 11, 2024
Filed: July 19, 2024
_____

Before LOKEN, ERICKSON, and GRASZ, Circuit Judges.
_____

GRASZ, Circuit Judge.

Frank Bibeau, an enrolled member of the Minnesota Chippewa Tribe, considers his self-employment income exempt from federal taxation. The United States Tax Court disagreed and held his self-employment income is taxable. On appeal, Bibeau argues that neither the Indian Citizenship Act of 1924 nor the treaties

between the United States and the Minnesota Chippewa Tribe authorize the taxation of Indians.[1]  We affirm the tax court's ruling.

## I.

Bibeau is an enrolled member of the Chippewa tribe who lives and practices law on the Leech Lake Reservation in Minnesota.  For the 2016 and 2017 tax years, Bibeau earned self-employment income from his law practice, which he and his wife reported on their joint federal income tax return.  Bibeau reported a large net operating loss carryforward that was enough to shield his income from taxes for both 2016 and 2017.  But this loss did not shield Bibeau's law-practice income from federal self-employment taxes.  Bibeau has never paid these tax debts.

In January 2019, the Commissioner of Internal Revenue sent Bibeau a letter advising him of his right to a Collection Due Process (CDP) hearing.  Bibeau requested a CDP hearing, during which he argued his 2016 and 2017 income was exempt from self-employment taxes. The Commissioner disagreed and sent Bibeau a notice of determination sustaining the Internal Revenue Service's (IRS) decision to collect the tax.  Bibeau then petitioned the tax court, challenging the IRS determination.  There, Bibeau argued Indians generally are exempt from federal taxes or, alternatively, that treaties between the government and the Chippewa exempted his income from federal taxes.

The tax court sustained the notice of determination.  It explained Indians are subject to federal tax laws unless a law or treaty specifically provides otherwise.  The tax court held neither the Indian Citizenship Act of 1924, Pub. L. No. 68-175, ch. 233, 43 Stat. 253 (codified at 8 U.S.C. § 1401(b)) (the Act) nor the 1837 Treaty between the United States and the Minnesota Chippewa Tribe (the 1837 Treaty) contain a specific exemption from federal taxation.  Bibeau now appeals.

---

[1]Bibeau refers to himself as an "Indian" and the Chippewa as a "tribe."  We will do the same.

## II.

As citizens of the United States, Indians are subject to federal tax requirements unless *specifically exempted* by a treaty or act of Congress dealing with Indian affairs. *See Squire v. Capoeman*, 351 U.S. 1, 6 (1956). As Bibeau has failed to adequately point to any statute or treaty specifically exempting his self-employment income, he is subject to self-employment taxes.

Tax court decisions are reviewed "in the same manner and to the same extent" as civil district court decisions tried without a jury. *See* 26 U.S.C. § 7482. "Since the question in this case is a purely legal one, our review is de novo." *Estate of Robinson v. C.I.R.*, 15 F.3d 779, 781 (8th Cir. 1994).

Bibeau does not contend that his self-employment income is exempt from federal income taxation under any provision of the Internal Revenue Code. Instead, he claims the Act lacks clear and precise language authorizing Congress to tax Indians. Bibeau holds this view because he thinks Congress must *expressly authorize* the federal taxation of Indians before income taxes can be levied. There are two problems with this argument.

First, Indians, as citizens of the United States, are generally subject to taxation. Any other notion ignores Congress's explicit mandate that "every individual[,]" 26 U.S.C. § 1(c), will be taxed on "all income from whatever source derived," 26 U.S.C. § 61(a). Since the Act took effect in 1924, all native-born Indians have been citizens of the United States, 8 U.S.C. § 1401(b), and the Internal Revenue Code does not grant tax exemptions solely because someone is an Indian—a suggestion Supreme Court precedent clearly precludes. *See Capoeman*, 351 U.S. at 6; *Choteau v. Burnet*, 283 U.S. 691, 694–95 (1931); *see also Perkins v. Comm'r*, 970 F.3d 148, 154 (2d Cir. 2020) ("[A]bsent a specific exemption, American Indians are not, by virtue of their status, exempt from paying federal income taxes.").

Second, Bibeau's argument cuts against the well-established legal proposition that Indians are "subject to federal income tax unless *specifically exempted* by treaty or statute." *Jourdain v. Comm'r*, 617 F.2d 507, 509 (8th Cir. 1980) (emphasis added). *See Capoeman*, 351 U.S. at 6 ("[T]o be valid, exemptions to tax laws should be clearly expressed."); *Superintendent of Five Civilized Tribes, for Sandy Fox, Creek No. 1263 v. Comm'r*, 295 U.S. 418, 420 (1935) (holding that where "[t]he general terms of the taxing act include the income under consideration," any exemption "must derive plainly from agreements with the [Tribe] or some act of Congress dealing with their affairs"). Bibeau is correct that treaties and statutes relating to the rights of Indians should be liberally construed in their favor. *See Carpenter v. Shaw*, 280 U.S. 363, 367 (1930); *Oregon Dep't. of Fish & Wildlife v. Klamath Indian Tribe*, 473 U.S. 753, 766 (1985) ("[D]oubts concerning the meaning of a treaty with an Indian tribe should be resolved in favor of the tribe."). "The effect of th[is] rule[] of interpretation is to make it possible for language that could not have been concerned with the income tax to nevertheless create an exemption from it." *Lazore v. Comm'r*, 11 F.3d 1180, 1184 (3d Cir. 1993). Nonetheless, that "principle comes into play only if a statute or treaty contains language *which can reasonably be construed* to confer income exemptions." *Holt v. Comm'r*, 364 F.2d 38, 40 (8th Cir. 1966) (emphasis added). The Supreme Court "has repeatedly said that tax exemptions are not granted by implication" to Indians. *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 156 (1973) (quoting *Okla. Tax Comm'n v. United States*, 319 U.S. 598, 606 (1943)).

This court has already determined the purpose of the Act. In *Fond du Lac Band of Lake Superior Chippewa v. Frans*, we held the Act maintained Indians' "pre-existing right to tribal and other property" but "does not create a tax exemption." 649 F.3d 849, 851 (8th Cir. 2011). Bibeau leans on the tribal property proviso[2] in the Act, but in *Frans* we explained that it reflected "a settled and

---

[2]The tribal property proviso states, "the granting of such citizenship shall not in any manner impair or otherwise affect the right of any Indian to tribal or other property." Indian Citizenship Act of 1924, Pub. L. No. 68-175, ch. 233, 43 Stat. 253 (codified at 8 U.S.C. § 1401(b)).

persistent purpose on the part of Congress . . . to place individual Indians who have abandoned tribal relations . . . upon the same footing" regarding tribal property "as though they had maintained their tribal relations." *Id.* at 851 (second ellipses in original) (quoting *Oakes v. United States*, 172 F. 305, 308–09 (8th Cir. 1909)). The proviso does not exempt Indians from taxation as citizens. *See id.* at 851.

Bibeau cursorily repeats his argument made before the tax court that his income is exempt from taxation under Article 5 of the 1837 Treaty. Bibeau asserts his income is exempt because he "defend[s] the tribal treaty protected rights held by other Chippewa." He also appears to argue that Article 5 protects the right to make a "modest living" relating to treaty-protected activities. These contentions are without merit.

On its face, Article 5 contains no "clearly expressed" exemption from income tax. *Capoeman*, 351 U.S. at 6. Article 5 states, in its entirety: "The privilege of hunting, fishing, and gathering the wild rice, upon the lands, the rivers and the lakes included in the territory ceded, is guaranteed to the Indians, during the pleasure of the President of the United States." 1837 Treaty, art. 5, 7 Stat. 536. Article 5 does not refer to taxation, and as Bibeau admits, the treaties between the Chippewa and the United States "make no mention of tax, taxing or taxation[.]" Nor does the 1837 Treaty contain other terms that might potentially address taxation.

Bibeau contends *Minnesota v. Mille Lacs Band of Chippewa Indians* supports Indians not being taxed under the 1837 Treaty. 526 U.S. 172 (1999). But nothing in *Mille Lacs* suggests such a conclusion. *Mille Lacs* simply held the usufructuary rights to "hunting, fishing, and gathering the wild rice" guaranteed in Article 5 were not abrogated by an 1855 treaty, by Minnesota's admission into the Union, or by an 1850 Executive Order. *Id*. at 195, 200, 205. Thus, the 1837 Treaty protects Chippewa Indians' right to make a "modest living" from hunting, fishing, and gathering wild rice, *see United States v. Brown*, 777 F.3d 1025, 1031 (8th Cir. 2015); it does not guarantee Indians can live tax-free.

Bibeau's final argument fares no better. He argues tribal "sovereign tax immunity" is recognized in Article 1, § 2, cl. 3 of the U.S. Constitution and the Fourteenth Amendment. He is incorrect. "[C]onstitutional references to 'Indians not taxed' merely reflect the fact that some Indians were not taxed by the states in which they resided; the references do not restrain the federal government from taxing Indians." *Jourdain*, 617 F.2d at 508–09.

## III.

Where, as here, no treaty or statute expressly or implicitly exempts Bibeau's income from taxation, "[t]here can be no question about the power of Congress to levy an income tax upon [it] . . . ." *Holt*, 364 F.2d at 42. We affirm the tax court's decision.

_____